IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HEVER AUGUSTO SULBARAN | : | |
| HENAO and ROBERTO RIOS | : | Civil Action File No. |
| JESUS CRUZ, | : | |
| | : | |
|   Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| FERETTO CO., INC., | : | |
| UNDERGROUND NETWORK | : | |
| SOLUTIONS, LLC, RUDY & | : | |
| SERVICES, LLC, TOMA BOTH | : | |
| and RUDOLF CALOIAN, | : | |
| | | |
|   Defendants. | | |

---

## COMPLAINT

---

Pursuant to Fed. R. Civ. P. 7, Plaintiffs Hever Augusto Sulbaran Henao ("Henao") and Roberto Rios Jesus Cruz ("Cruz") (collectively "Plaintiffs"), bring this Complaint against Defendants Feretto Co., Inc. ("Feretto"), Underground Network Solutions, LLC ("Underground"), Rudy & Services, LLC ("Rudy & Services"), Toma Both ("Both"), and Rudolf Caloian ("Caloian"), (collectively "Defendants") and show the Court as follows:

**INTRODUCTION**

1.

This is an FLSA case. Defendants were Plaintiffs' previous employers during the three years prior to the filing of this Complaint. Defendants misclassified Plaintiffs as independent contractors to avoid the minimum wage and overtime pay provisions of the FLSA. Defendants failed to compensate Plaintiffs at or above the FLSA minimum wage (*i.e.* $7.25) for each hour they worked. In addition, Defendants failed to pay Plaintiffs at one-and-one-half times their regular hourly rate for all hours they worked in excess of forty hours during each workweek.

2.

In addition to his federal causes of action, Plaintiff Henao asserts pendent state law claims which arise out of the same set of operating facts as his federal claims.  These are (1) breach of contract, (2) quantum meruit, and (3) promissory estoppel.

**JURISDICTION AND VENUE**

3.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, FLSA §16(b), 29 U.S.C. § 216(b), 28 U. S.C. § 1331, because this case arises under the FLSA, a federal statute that affects interstate commerce.

4.

This Court has supplemental jurisdiction over Plaintiff Henao's state law claims set forth herein arising under Georgia law in accord with 28 U.S.C. §1367 because the state law claims are so related to the federal claims that they form part of the same case or controversy.

5.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because Feretto Co., Inc., Underground Network Solutions, LLC and Rudy & Services, LLC are located in this judicial district and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

**THE PARTIES**

6.

Henao resides in Gwinnett County, Georgia.

7.

Cruz resides in Fulton County, Georgia.

8.

Defendant Feretto, employed Plaintiffs as laborers during the three years prior to the filing of the within action.

9.

Feretto is a Domestic Profit Corporation organized under the laws of the State of Georgia.

10.

Feretto is subject to the personal jurisdiction of this Court.

11.

Feretto may be served with process via service on its registered agent for service, Business Filings Incorporated at 289 S. Culver Street, Lawrenceville, Georgia 30046.

12.

Defendant Underground employed Plaintiffs as laborers during the three years prior to the filing of the within action.

13.

Undergound is a Domestic Limited Liability corporation organized under the laws of the State of Georgia.

14.

Underground is subject to the personal jurisdiction of this Court.

15.

Underground may be served with process via service on its registered agent for service, Gregory D. Jay at 4350 South Lee Street, Buford, Georgia 30515.

16.

Defendant Rudy & Services employed Henao as a laborer during the years 2015, 2016 and 2017.

17.

Rudy & Services is a Domestic Limited Liability Company organized under the laws of the State of Georgia.

18.

Rudy & Services is subject to the personal jurisdiction of this Court.

19.

Rudy & Services may be served with process via service on its registered agent for service Rudolf Caloian at 1097 Raleigh Way, Lawrenceville, Georgia 30043.

20.

Toma Both is a natural person who resides in Gwinnett County, Georgia.

21.

At all times relevant to this action, Toma Both was designated as the Secretary, CEO and CFO for Feretto.

22.

At all times relevant to this action, Toma Both had a corporate interest in Feretto.

23.

At all times relevant to this action, Toma Both had a corporate interest in Underground.

24.

Toma Both is subject to the personal jurisdiction of this Court.

25.

Toma Both may be served with process at his residence located at 2910 Buford Drive, Apt. 1427, Buford, Georgia 30519.

26.

Rudolf Caloian is a natural person who resides in Gwinnett County, Georgia.

27.

At all times relevant to this action, Rudolf Caloian was designated as the Secretary, CEO and CFO for Rudy & Services.

28.

At all times relevant to this action, Rudolf Caloian had a corporate interest in Rudy & Services.

29.

At all times relevant to this action, Rudolf Caloian had a corporate interest in Feretto.

30.

At all times relevant to this action, Rudolf Caloian had a corporate interest in Underground.

31.

Rudolf Caloian is subject to the personal jurisdiction of this Court.

32.

Rudolf Caloian may be served with process at his residence located at 2081
Wildcat Cliffs Lane, Lawrenceville, Georgia 30043.

33.

At all times material hereto from August 29, 2015 until October 2017,
Henao was an "employee" of Feretto, LLC as defined in the FLSA § 3(e)(1), 29
U.S.C. § 203(e)(1).

34.

At all times material hereto from August 29, 2015 until October 2017,
Feretto was an "employer" of Henao as defined in FLSA § 3(d), 29 U.S.C.
§203(d).

35.

At all times material hereto from approximately August 29, 2015 until 2017,
Henao was an "employee" of Rudy & Services, LLC as defined in the FLSA §
3(e)(1), 29 U.S.C. § 203(e)(1).

36.

At all times material hereto from approximately August 29, 2015 until 2017,
Rudy & Services has been an "employer" of Henao as defined in FLSA § 3(d), 29
U.S.C. §203(d).

37.

At all times material hereto from October 2017 until March 12, 2018, Henao was an "employee" of Underground as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

38.

At all times material hereto from approximately October 2017 until March 12, 2018, Underground has been an "employer" of Henao as defined in FLSA § 3(d), 29 U.S.C. §203(d).

39.

At all times material hereto from May 2017 until October 2017, Cruz was an "employee" of Feretto, LLC as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

40.

At all times material hereto from May 2017 until October 2017, Feretto was an "employer" of Cruz as defined in FLSA § 3(d), 29 U.S.C. §203(d).

41.

At all times material hereto from October 2017 until December 2017, Cruz was an "employee" of Underground as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

42.

At all times material hereto from approximately October 2017 until December 2017, Underground has been an "employer" of Cruz as defined in FLSA § 3(d), 29 U.S.C. §203(d).

**JOINT EMPLOYER ALLEGATIONS**

43.

At all times relevant from August 29, 2015 until 2017, Feretto and Rudy & Services comprised a single "enterprise engaged in commerce" as defined in FLSA §3(s)(1)(C); 29 U.S.C. § 203(s)(1)(C).

44.

At all times relevant from August 29, 2015 until 2017, Feretto and Rudy & Services shared the services of Henao.

45.

At all times relevant from August 29, 2015 until 2017, Rudy & Services and Feretto acted directly or indirectly in the interest of each other with respect to Henao.

46.

At all times relevant from August 29, 2015 until 2017, Henao was under the direct control of both Feretto and Rudy & Services.

47.

At all times relevant from August 29, 2015 until 2017, Feretto and Rudy & Services exercised joint control over Henao in his capacity as an employee.

48.

In 2015, Rudy & Services and Feretto jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

49.

In 2016, Rudy & Services and Feretto jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

50.

In 2017, Rudy & Services and Feretto jointly had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

51.

At all times relevant from August 29, 2015 until 2017, Feretto and Rudy & Services were a joint employer of Henao within the meaning of the FLSA.

SUCCESSOR IN INTEREST

52.

On July 30, 2014, Both formed Feretto by registering that corporation with

Georgia Secretary of State.

53.

Both has continuously held an ownership interest in Feretto since its formation.

54.

On October 5, 2017, Both formed Undergound.

55.

Both has continuously held an ownership interest in Underground since its formation.

56.

Underground performs the same business function that was previously done by Feretto.

57.

Upon the formation of Underground, Feretto ceased operating.

58.

Underground utilizes the same equipment and supplies in the furtherance of its commercial business as were utilized by Feretto.

59.

Underground continues to utilize the same business telephone number that was used by Feretto.

60.

Feretto transferred its assets to Underground.

61.

On or about October 5, 2017, Defendants converted Feretto employees into Underground's employees under the same terms and conditions as they were employed at Fererro.

62.

At the time of its formation, Underground had notice of its potential liability to Feretto's employees, including Plaintiffs.

63.

Plaintiffs performed services on behalf of Feretto prior to October 2017 and for Underground after its formation.

64.

Underground is a successor in interest to Feretto as defined by the FLSA.

65.

Feretto is unable to provide full relief to Plaintiffs.

66.

Underground is responsible to Plaintiffs for the actions of Feretto.

## FLSA INDIVIDUAL COVERAGE

67.

At all times relevant from August 29, 2015 until October 5, 2017, Henao was "engaged in commerce" as an employee of Feretto as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

68.

From approximately August 29, 2015 until 2017, Henao was "engaged in commerce" as an employee of Rudy & Services as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

69.

At all times relevant from May 2017 until October 5, 2017, Cruz was "engaged in commerce" as an employee of Feretto as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

70.

From approximately October 5, 2017 until March 15, 2018, Henao was "engaged in commerce" as an employee of Underground as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

71.

From approximately October 5, 2017 until December 2017, Cruz was "engaged in commerce" as an employee of Underground as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

72.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Plaintiffs regularly used the channels of interstate commerce in the course of their duties for Defendants.

**FLSA ENTERPRISE COVERAGE**

*Feretto*

73.

At all times relevant from August 29, 2015 through October 5, 2017, Feretto has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

74.

During 2015, Feretto had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

75.

During 2016, Feretto had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

76.

During 2017, Feretto had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

77.

During 2015, Feretto had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

78.

During 2016, Feretto had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

79.

During 2017, Feretto had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

80.

During 2015, Feretto had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

81.

During 2016, Feretto had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

82.

During 2017, Feretto had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

*Rudy & Services*

83.

At all times during the Relevant Time Period, Rudy & Services has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

84.

During 2015, Rudy & Services had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

85.

During 2016, Rudy & Services had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

86.

During 2017, Rudy & Services had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

87.

During 2015, Rudy & Services had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

88.

During 2016, Rudy & Services had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

89.

During 2017, Rudy & Services had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

90.

During 2015, Rudy & Services had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

91.

During 2016, Rudy & Services had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

92.

During 2017, Rudy & Services had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

### Underground

93.

At all times relevant from October 5, 2017 through March 15, 2018, Underground has been an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a) and in the FLSA, § 7(a)(1), 29 U.S.C. § 207(a)(1).

94.

During 2017, Underground had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

95.

During 2018, Underground had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

96.

During 2017, Underground had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

97.

During 2018, Underground had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

98.

During 2017, Underground had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

99.

During 2018, Underground had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

## INDIVIDUAL LIABILITY UNDER THE FLSA

*Both*

100.

At all times relevant from August 29, 2015 through October 5, 2017, Both was the owner and operator of Feretto for which Plaintiffs worked.

101.

Both was involved in the day to day operations of Feretto for which Plaintiffs worked.

102.

During all times relevant from August 29, 2015 until October 5, 2017, Both was a Manager for Feretto in which Plaintiffs worked.

103.

During all times relevant from October 5, 2017 through March 15, 2018, Both was an owner and/or operator of Underground for which Plaintiffs worked.

104.

During all times relevant from October 5, 2017 through March 15, 2018, Both was a Manager or supervisor for Underground in which Plaintiffs worked.

105.

Both was involved in the day to day operations of Underground for which Plaintiffs worked.

106.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Both exercised operational control over the work activities of Plaintiffs.

107.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Both was invested with supervisory authority over Plaintiffs.

108.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Both scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

109.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Both exercised authority and supervision over Plaintiffs compensation.

20

110.

At all times material hereto, Both has been an "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

### Caloian

111.

At all times relevant from August 29, 2015 until 2017, Caloian was the owner and operator of Rudy & Services for which Henao worked.

112.

Caloian was involved in the day to day operations of Rudy & Services for which Henao worked.

113.

During all times relevant from August 29, 2015 until 2017, Caloian was a Manager or supervisor for Rudy & Services in which Henao worked.

114.

At all times relevant from August 29, 2015 until October 5, 2017, Caloian was the owner and/or operator of Feretto for which Plaintiffs worked.

115.

Caloian was involved in the day to day operations of Feretto for which Plaintiffs worked.

116.

During all times relevant from August 29, 2015 until October 5, 2017, Caloian was a Manager or supervisor for Feretto in which Plaintiffs worked.

117.

During all times relevant from October 5, 2017 through March 15, 2018, Caloian was an owner and/or operator of Underground for which Plaintiffs worked.

118.

During all times relevant from October 5, 2017 through March 15, 2018, Caloian was a Manager or supervisor for Underground in which Plaintiffs worked.

119.

Caloian was involved in the day to day operations of Underground for which Plaintiffs worked.

120.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Caloian exercised operational control over the work activities of Plaintiffs.

121.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Caloian was invested with supervisory authority over Plaintiffs.

122.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Caloian scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

123.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Caloian exercised authority and supervision over Plaintiffs compensation.

124.

At all times material hereto, Caloian has been an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

**FLSA EXEMPTIONS**

125.

At all times during the Relevant Time Period (*i.e.* August 29, 2015 through March 15, 2018), Plaintiffs primary duty did not involve the exercise of independent judgment or discretion regarding significant business decisions on behalf of Defendants.

126.

At all times during the Relevant Time Period, Plaintiffs were not exempt from the FLSA minimum wage provisions.

127.

At all times during the Relevant Time Period, Plaintiffs were not exempt from the FLSA maximum hours provisions by reason of any exemption.

128.

At all times during the Relevant Time Period, Defendants did not employ Plaintiffs in a bona fide professional capacity within the meaning of 29 USC § 213 (a).

129.

At all times during the Relevant Time Period, Defendants did not employ Plaintiffs in a bona fide administrative capacity within the meaning of 29 USC § 213 (a).

130.

At all times during the Relevant Time Period, Defendants did not employ Plaintiffs in a bona fide executive capacity within the meaning of 29 USC § 213 (a).

131.

At all times material hereto, Defendants did not employ Plaintiffs  in the capacity of an "outside salesman" so as to be exempt from the minimum and maximum hour requirements of 29 USC § 213 (a).

132.

During the Relevant Time Period, Defendants required Plaintiffs to comply with verbal instructions about how they were to perform their duties.

133.

During the Relevant Time Period, Defendants provided instruction to Plaintiffs about how they should perform their job duties for Defendants.

134.

During the Relevant Time Period, Defendants determined the hours and schedule which they required Plaintiffs to work.

135.

During the Relevant Time Period, Defendants closely supervised Plaintiffs.

136.

At all times during the Relevant Time Period, Defendants were aware of the FLSA requirement that it compensate non-exempt employees at one and one-half times their regular rates for all time that it suffered or permitted them to work in excess of forty (40) hours in a workweek.

**PLAINTIFFS WERE EMPLOYEES OF DEFENDANTS**

137.

At all times relevant to this action, the work performed by Plaintiffs was integral to Defendants' business purposes.

138.

Throughout the Relevant Time Period, Plaintiffs did not invest in Defendants' business such that they shared any significant risk of loss.

139.

Throughout the Relevant Time Period, Plaintiffs did not utilize any special skills in the course of their work for Defendants.

140.

Throughout the Relevant Time Period, Defendants did not require any formal training, degree, or certificate to allow Plaintiffs to operate its vehicles or perform its business purpose.

141.

Throughout the Relevant Time Period, Plaintiffs did not possess any specialized license or certification that they utilized to perform services on behalf of Defendants.

142.

Throughout the Relevant Time Period, Plaintiffs did not exercise independent business judgment in the course of their work for Defendants.

143.

Throughout the Relevant Time Period, Plaintiffs did not possess commercial driver's licenses.

144.

Throughout the Relevant Time Period, Defendants controlled the rate of Plaintiffs' pay.

145.

Throughout the Relevant Time Period, Defendants determined the amount that would be charged for each job Plaintiffs performed on behalf of Defendants.

146.

Throughout the Relevant Time Period, Defendants told Plaintiffs what amount each worker should be paid for each job completed.

147.

Throughout the Relevant Time Period, Defendants controlled Plaintiffs' work hours.

148.

Throughout the Relevant Time Period, Defendants controlled the manner in which Plaintiffs' work was performed.

149.

Throughout the Relevant Time Period, Plaintiffs did not solicit customers on behalf of Defendants.

150.

Throughout the Relevant Time Period, all of Plaintiffs' working efforts were directed at serving Defendants' customers.

151.

Throughout the Relevant Time Period, Defendants provided Plaintiffs with all tools, equipment, and other materials necessary for Plaintiffs to perform their jobs, including cable, missiles, jack hammers, compressors, and vehicles.

152.

Throughout the Relevant Time Period, Plaintiffs made recommendations to Defendants regarding hiring but Defendants made all final decisions.

153.

Throughout the Relevant Time Period, Plaintiffs did not have authority to hire employees or contractors on behalf of Defendants.

154.

Throughout the Relevant Time Period, Plaintiffs did not have authority to fire employees or contractors on behalf of Defendants.

155.

At all times during the Relevant Time Period, Plaintiffs were "employees" as defined in 29 U.S.C. § 203(e) in connection with their work for Defendants as a matter of economic reality.

156.

At all times during the Relevant Time Period, Defendants were Plaintiffs' "employers" as defined in 29 U.S.C. § 203(d) as a matter of economic reality.

157.

At all times during the Relevant Time Period, Defendants misclassified Plaintiffs as independent contractors.

**ADDITIONAL FACTUAL ALLEGATIONS**

158.

Defendants employed Henao as a cable layer and underground pipe installer from approximately January 2015 through June 27, 2017 and again from approximately September 2017 until March 15, 2018.

159.

During the Relevant Time Period, Henao did not own his own company and worked exclusively for Defendants.

160.

During the Relevant Time Period, Henao did not hire any workers on behalf of Defendants.

161.

During the Relevant Time Period, Henao did not fire any workers on behalf of Defendants.

162.

During the Relevant Time Period, Henao did not set the pay rates of workers on behalf of Defendants.

163.

During the Relevant Time Period, Henao worked 4-6 days during most work weeks depending on the weather.

164.

During the Relevant Time Period, Henao normally worked 10-15 hours during most work days.

165.

Defendants employed Cruz as a cable layer and underground pipe installer from May 2017 until December 2017.

166.

During the Relevant Time Period, Cruz did not own his own company and worked exclusively for Defendants.

167.

During the Relevant Time Period, Cruz did not hire any workers on behalf of Defendants.

168.

During the Relevant Time Period, Cruz did not fire any workers on behalf

of Defendants.

169.

During the Relevant Time Period, Cruz did not set the pay rates of workers on behalf of Defendants.

170.

During the Relevant Time Period, Cruz worked 4-6 days during most work weeks depending on the weather.

171.

During the Relevant Time Period, Cruz normally worked 10-15 hours during most work days.

172.

During the Relevant Time Period, Defendants requested that Plaintiffs sign Tool Lease Agreements to use the tools that Defendants provided to them for each work assignment.

173.

During the Relevant Time Period, Defendants requested that Plaintiffs sign Auto Lease Agreements to use the vehicles that Defendants provided to them for work on Defendants' behalf.

174.

During the Relevant Time Period, Defendants requested that Plaintiffs sign Lease Agreements for tools and vehicles as part of a scheme to classify Plaintiffs as independent contractors.

175.

During the Relevant Time Period, Defendants deducted fees for use of tools and equipment from the total paid to Plaintiffs for each job they completed on behalf of Defendants.

176.

During the Relevant Time Period, Defendants set the amounts charged to Defendants' customers for each job assignment.

177.

During the Relevant Time Period, Defendants set the amounts paid to Plaintiffs for each job they completed.

178.

During the Relevant Time Period, Defendants told Plaintiffs the amounts that each member of the crew on each job site should be compensated.

179.

During the Relevant Time Period, Defendants directed Plaintiffs to pay each worker on each job site.

180.

During the Relevant Time Period, there were times that Plaintiffs did not receive any compensation once they compensated each member of the crew on each job site.

181.

During the Relevant Time Period, Defendants asked Plaintiffs to pay each member of their crew with funds received from Defendants as part of a scheme to classify Plaintiffs as independent contractors.

182.

During the Relevant Time Period, Defendants classified Plaintiffs as Independent Contractors to avoid paying them minimum wages in accordance with the provisions of the FLSA.

183.

During the Relevant Time Period, Defendants classified Plaintiffs as Independent Contractors to avoid paying them overtime wages in accordance with the provisions of the FLSA.

184.

At all times material hereto, Defendants were aware of the actual number of hours both Plaintiffs worked during each work week.

185.

Defendants knew or should have known that both Plaintiffs were employees within the meaning of the FLSA and, thus, should have been paid in compliance with the FLSA.

186.

29 U.S.C. § 206 requires that Defendants compensate Plaintiffs at a rate of no less than $7.25 per hour for every hour worked in a work week.

187.

Defendants knew or should have known that 29 U.S.C. § 206 requires that Defendants should have compensated Plaintiffs at a rate of at least $7.25 per hour for every hour worked in a work week.

188.

During the Relevant Time Period, Defendants failed to compensate Plaintiffs at a rate of $7.25 per hour for every hour they worked.

189.

During the Relevant Time Period, Defendants willfully failed to compensate Plaintiffs at a rate of $7.25 per hour for each hour they worked.

190.

Defendants knew or should have known that the Plaintiffs were entitled to FLSA overtime protections.

191.

At all times relevant, Defendants were aware of the FLSA requirement that they compensate non-exempt employees at one and one-half times their regular rates for all time that it suffered or permitted them to work in excess of forty (40) hours in a workweek.

192.

At all times during the Relevant Time Period, Plaintiffs regularly worked more than forty (40) hours in a given workweek on behalf of Defendants.

193.

At all times relevant, Defendants failed to compensate Plaintiffs at one and one-half times their regular hourly rate for all hours they worked in excess of forty (40) hours in a workweek.

194.

At all times material hereto, Defendants willfully failed to pay Plaintiffs at one-and-one-half times their regular rate for time worked in excess of forty (40) hours in any and all workweeks.

## COUNT I

## FAILURE TO PAY MINIMUM WAGE AS TO ALL DEFENDANTS

195.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

196.

At all times material hereto, Plaintiffs have been employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

197.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Defendants failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage as established in accordance with the FLSA.

198.

At all times relevant to this action from August 29, 2015 through March 15, 2018, Defendants willfully failed to compensate Plaintiffs at an hourly rate equal to or above the minimum wage as established in accordance with the FLSA.

199.

Plaintiffs are entitled to payment of minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

200.

As a result of the underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

201.

As a result of the underpayment of minimum wages, Defendants are liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

## COUNT II

## FAILURE TO PAY OVERTIME AS TO ALL DEFENDANTS

202.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

203.

At all times material hereto, Plaintiffs have been employees covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

204.

During the Relevant Time Period, Plaintiffs regularly worked in excess of forty (40) hours each week.

205.

Defendants failed to pay Plaintiffs at one and one half times their regular rates for work in excess of forty (40) hours in any week from August 29, 2015 through March 15, 2018.

206.

Defendants willfully failed to pay Plaintiffs at one and one half times their regular rates for work in excess of forty (40) hours in any week from August 29, 2015 through March 15, 2018.

207.

Plaintiffs are entitled to payment of due but unpaid overtime compensation in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

208.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

209.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to their litigation costs, including their reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

### COUNT III - BREACH OF CONTRACT AS TO PLAINTIFF HENAO

210.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

211.

Plaintiff Henao and Underground have been parties to a contract of employment (hereafter "the Contract") from October 5, 2017 through March 15, 2018.

212.

The Contract provided that Underground would pay Henao for work that was performed by Henao on behalf of and for the benefit of Underground.

213.

Underground has failed to pay Henao at all for work he performed during his last week of employment from approximately March 9, 2018 through March 15, 2018.

214.

Underground's failure to pay Henao for all work he performed from March 9, 2018 through March 15, 2018 constitutes a material breach of the Contract.

215.

As the direct and foreseeable result of this breach, Henao has sustained and continues to sustain damages in an amount to be proved at trial.

## COUNT IV – QUANTUM MERUIT

216.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

217.

From October 5, 2017 through March 15, 2018, Henao served as a cable layer and underground pipe installer on behalf of Underground.

218.

Henao's services as a cable layer and underground pipe installer for Underground as described above was valuable to Underground.

219.

Underground requested Henao's service as a cable layer and underground pipe installer.

220.

Underground knowingly accepted Henao's service as a cable layer and underground pipe installer.

221.

Defendants' receipt of Henao's services as a cable layer and underground pipe installer without compensation would be unjust.

222.

Henao expected to be compensated at the time he provided his services as a cable layer and underground pipe installer to Underground.

223.

Henao is entitled to a recover from Underground, the reasonable value of the services he provided as a cable layer and underground pipe installer for Underground, in an amount to be determined at trial.

## COUNT V - PROMISSORY ESTOPPEL

224.

The allegations in all previous paragraphs are incorporated by reference as if set out verbatim herein.

225.

Underground promised to pay Henao in return for Henao's service as a cable layer and underground pipe installer.

226.

Underground should have reasonably expected that Henao would induce action in reliance of said promise, *i.e.,* serve as a cable layer and underground pipe installer for Underground.

227.

Underground's promise induced Henao to act in reliance thereof, *i.e.,* to serve as a cable layer and underground pipe installer for Underground, to his detriment.

228.

Henao's service as a cable layer and underground pipe installer for Underground conferred a benefit on Underground.

229.

Underground failed to pay Henao in accordance with its promise.

230.

Henao relied on Underground's promise.

231.

Henao's reliance on Underground's promise was reasonable.

232.

Injustice can only be avoided by enforcement of Underground 's promise to compensate Henao.

233.

Henao is entitled to a recover from Underground, the reasonable value of the services he provided as a cable layer and underground pipe installer for Underground from March 9, 2018 to March 15, 2018, in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully pray:

1. That Plaintiffs be awarded amounts to be determined at trial against all Defendants, jointly and severally, in unpaid minimum wages due under the FLSA, plus additional like amounts in liquidated damages;

2. That Plaintiffs be awarded amounts to be determined at trial against all Defendants, jointly and severally, in unpaid overtime compensation due under the FLSA, plus additional like amounts in liquidated damages;

3. That Henao have and recover judgment against Defendant Underground, for the pendent State claims herein asserted in amounts to be proved at trial;

4. That Plaintiffs be awarded nominal damages;

5. That Plaintiffs be awarded costs of litigation, including their reasonable attorneys' fees from Defendants; and

6. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

<table>
<tr><td></td><td><strong>DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC</strong></td></tr>
<tr><td>3100 Centennial Tower<br>101 Marietta Street<br>Atlanta, Georgia 30303<br>(404) 979-3150<br>(404) 979-3170 (f)<br>charlesbridgers@dcbflegal.com<br>kevin.fitzpatrick@dcbflegal.com<br>benjamin@dcbflegal.com</td><td><em>/s/Charles R. Bridgers</em><br>Charles R. Bridgers<br>Ga. Bar No. 080791<br><br><em>/s/Kevin D. Fitzpatrick, Jr.</em><br>Charles R. Bridgers<br>Ga. Bar No. 080791<br><br><em>/s/ Mitchell D. Benjamin</em><br>Mitchell D. Benjamin<br>Ga. Bar No. 049888<br><br>Counsel for Plaintiffs</td></tr>
</table>